**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |  |
|---|---|---|
| EXPERIMENTAL PROPULSION LAB, LLC, a Utah Limited Liability Company, | ) ) ) | Case No. 25-CV-564 C |
| Plaintiff, | ) ) ) | Chief Judge Matthew H. Solomon |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) ) | |

**PLAINTIFF EPL'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**Table of Contents**

I.     Introduction. ................................................................................................ 1

II.    Response to Questions Presented. ................................................................ 2

III.   Response to Statement of the Case. ............................................................. 2

IV.   The Government fails to show any defect in standing or deficiency of ownership. ........... 2

       A.      EPL has adequately and accurately alleged full ownership of the '033 patent since it issued in 2015. ................................................................. 2

       B.      The Government continues to rely on 2023 security agreements between third parties that incorrectly list the ownership of the '033 patent. ........................ 4

V.     The Government fails to show any deficiency in the allegations concerning the accused XM1155-SC Hypervelocity Projectile. ................................................... 7

       A.      EPL's claim against the XM1155-SC is not time-barred. ..................................... 7

       B.      EPL's claim against the XM1155-SC is adequately pleaded. ............................... 9

             1.      The allegations are plausible and provide more detail than is necessary to put the Government on notice. ............................................... 9

             2.      The Government's attempt to rebut the pleaded allegations with factual disagreements and attorney argument should be rejected. ............ 11

VI.   The Government's remaining arguments are of no effect. ............................................. 15

VII.   Conclusion. ...................................................................................................... 15

**Table of Authorities**

**Cases**

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) ................................................................................................ 9

*Bannum, Inc. v. United States*,
151 Fed. Cl. 755 (2021) ......................................................................................................... 6

*Chem. Separation Tech., Inc. v. United States*,
51 Fed. Cl. 771 (2002) ......................................................................................................... 13

*Focus Prods. Grp. Int'l v. Kartri Sales Co.*,
2021 U.S. Dist. LEXIS 92470 (S.D.N.Y. May 14, 2021) ....................................................... 7

*Intell. Techs. LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir. 2024) ........................................................................................... 2, 7

*Invitrogen Corp. v. Clontech Labs., Inc.*,
429 F.3d 1052 (Fed. Cir. 2005) ........................................................................................... 13

*JG Techs., LLC v. United States*,
156 Fed. Cl. 691 (2021) ......................................................................................................... 9

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
714 F.3d 1277 (Fed. Cir. 2013) ........................................................................................... 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ............................................................................................................... 3

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019) ...................................................................................... 3, 4, 7

*Maimon v. United States*,
175 Fed. Cl. 553 (2025) ......................................................................................................... 3

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
No. 13-304-LPS, 2016 U.S. Dist. LEXIS 134000 (D. Del. Sep. 29, 2016) .......................... 14

*Mentor H/S, Inc. v. Med. Device All., Inc.*,
240 F.3d 1016 (Fed. Cir. 2001) ............................................................................................. 5

*Power Density Sols. LLC v. United States*,
159 Fed. Cl. 208, 220 (2022) .......................................................................................... 11, 12

*Power Density Solutions, LLC v. United States*,
2023 U.S. Claims LEXIS 479, 2023 WL 2624386 (Fed. Cl. Mar. 24, 2023) ..................... 3, 14

*Propat Int'l Corp. v. Rpost, Inc.*,
473 F.3d 1187 (Fed. Cir. 2007) ............................................................................................. 5

*RN Expertise, Inc. v. United States*,
97 Fed. Cl. 460 (2011) ........................................................................................................... 6

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
959 F.3d 1065 (Fed. Cir. 2020) ............................................................................................. 4

*Sirf Tech., Inc. v. Int'l Trade Comm'n,*
  601 F.3d 1319 (Fed. Cir. 2010) ................................................................ 5

*Starobin v. United States,*
  229 Ct. Cl. 67 (U.S. 1981) ................................................................. 8, 9

*STC.UNM v. Intel Corp.,*
  754 F.3d 940 (Fed. Cir. 2014) ................................................................ 7

*ThermoLife Int'l, L.L.C. v. NeoGenis Labs, Inc.,*
  411 F. Supp. 3d 486 (D. Ariz. 2019) ........................................................ 14

*Univ. of S. Fla., Bd. of Trs. v. United States,*
  146 Fed. Cl. 274 (2019) ....................................................................... 13

**Statutes**

35 U.S.C. § 100(d) ............................................................................. 3

35 U.S.C. § 281 ................................................................................. 3

37 C.F.R. § 3.54 ............................................................................... 5

**Rules**

Fed. R. Evid. 801 .............................................................................. 6

Fed. R. Evid. 802 .............................................................................. 6

Fed. R. Evid. 1002 ............................................................................ 6

## I.    Introduction.

Plaintiff Experimental Propulsion Lab, LLC ("EPL") is the sole owner of U.S. Patent No. 9,086,033, as it has been since the patent issued on July 21, 2015.  ECF 1-2 (the '033 patent) at 1 ("Assignee:  Experimental Propulsion Lab, LLC"); ECF 8-1 at A12-A16 (Notarized and Recorded Assignment from Inventors Dushku and Holemans, dated June 10, 2015).  Yet the Government refuses to accept EPL's well-pleaded and substantiated allegations of ownership, choosing instead to rely upon a pair of 2023 security agreements entered by third parties that incorrectly identify the '033 patent's ownership.  ECF 17 ("Mot.") at 9-12, 21-25.  The Government spends many pages arguing that EPL lacks standing, but the entire premise of these arguments is that "Solaero and Planetary acquire[d] title to the '033 Patent after it is relinquished by EPL."  *Id.* at 11.  That premise is false.  EPL never transferred (or "relinquished") the patent. ECF 11 ("FAC") at ¶ 11 ("[A]fter EPL acquired all right, title, and interest in the '033 patent, it never assigned those rights to any other entity or person").  And Solaero and Planetary never "acquire[d] title to the '033 Patent"—which is why there is no citation of evidence for this part of the Government's imagined chain of title.



Mot. at 12 (annotated).

1

As to the accused XM1155-SC Hypervelocity Projectile, the Government no longer asserts that EPL's claim is time-barred. Mot. at 25-28. But the Government argues that the allegations of how this device infringes are insufficient. *Id.* at 31-36. These arguments impliedly rely on a heightened pleading standard that does not match the law, coupled with unsubstantiated attorney argument purporting to reinterpret technical evidence. There is no basis for dismissing the allegations concerning the XM1155-SC. Nor is there any basis for dismissing any other portion of the Amended Complaint, as the XM1155-SC is the only version of the HVP that is currently known or alleged by Plaintiff to infringe.

The Government's motion should therefore be denied in its entirety.

## II.    Response to Questions Presented.

Plaintiff EPL does not fundamentally dispute the Government's statement of the questions presented by its motion. However, the phrasing of the third question ("Whether Plaintiff sufficiently plead unauthorized use by the Government?") suggests that "authorization" is in dispute when it is not.

## III.    Response to Statement of the Case.

The Government states that it "has assumed the truth of all uncontroverted jurisdictional facts and all well-plead facts suggesting Plaintiff's entitlement to relief that are alleged in the Amended Complaint." Mot. at 3. This is not correct. As shown below, the Government's motion frequently disregards and attempts to rebut well-pleaded facts with erroneous logic and unsubstantiated attorney argument on the underlying merits of EPL's claim.

## IV.    The Government fails to show any defect in standing or deficiency of ownership.

### A.    EPL has adequately and accurately alleged full ownership of the '033 patent since it issued in 2015.

The owner of a patent has exclusionary rights and therefore has Article III standing. *Intell. Techs. LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814-816 (Fed. Cir. 2024) ("In general,

2

the question for the injury-in-fact threshold is whether a party has *an* exclusionary right…A patent owner has exclusionary rights as a baseline matter unless it has transferred all exclusionary rights away." (italics in original)); *Maimon v. United States*, 175 Fed. Cl. 553, 559 (2025) ("[A]s the sole owner of the asserted patents at the time this suit was filed, Power Density stands as the only plaintiff satisfying the constitutional standing requirements." (quoting *Power Density Solutions, LLC v. United States*, 2023 U.S. Claims LEXIS 479, 2023 WL 2624386 at *4 (Fed. Cl. Mar. 24, 2023))). The owner of a patent also constitutes a "patentee" under Section 281 of the Patent Act and therefore has statutory standing as well. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) ("Title 35 allows a 'patentee' to bring a civil action for patent infringement. 35 U.S.C. § 281. The term patentee includes the original patentee (whether the inventor or original assignee) and 'successors in title.' 35 U.S.C. § 100(d).").[1]

As the Amended Complaint alleges, Plaintiff EPL is the original patentee and the current patentee and has never transferred away *any* exclusionary rights to the '033 patent. ECF 11-1 ('033 patent) at 1 ("Assignee: Experimental Propulsion Lab, LLC"); ECF 11 (FAC), ¶¶ 1, 11 ("[A]fter EPL acquired all right, title, and interest in the '033 patent, it never assigned those rights to any other entity or person; it remains the full owner of the patent and all rights to enforce the patent and seek and collect damages for past and ongoing infringement"). These allegations are truthful and supported by the Government's own submission.[2] And they are more than sufficient to establish ownership and standing at the pleading stage. In *Schwendimann*, the

---

[1] "[T]he Supreme Court has recently clarified that so-called 'statutory standing' defects do not implicate a court's subject-matter jurisdiction." *Id*. at 1235, citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014).

[2] ECF 8-1 (Govt.'s Appendix) at A12-A16 (Notarized and Recorded Assignment from Inventors Dushku and Holemans, dated June 10, 2015).

3

Federal Circuit determined that because the plaintiff's complaint contained the allegations "that she is the owner by assignment of the '845 patent and Appellants infringed that patent" there was "no 'standing' issue to be decided." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020). "As long as a plaintiff alleges facts that support an arguable case or controversy under the Patent Act, the court has both the statutory and constitutional authority to adjudicate the matter." *Id.*; *see Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) (plaintiff had constitutional standing where it "adequately alleged that it possesses exclusionary rights and that Appellees infringe those rights").

> **B.     The Government continues to rely on 2023 security agreements between third parties that incorrectly list the ownership of the '033 patent.**

In its first motion to dismiss, the Government alleged a defect in EPL's chain of title based on a pair of 2023 security agreements that list the '033 patent, twice,[3] as being owned by Planetary Systems Corporation and by Solaero Technologies Corp. ECF 8 (First Motion) at 19-21. EPL's Amended Complaint addressed this, explaining that EPL acquired full right, title, and interest in the '033 patent from the inventors (pre-issuance), EPL never assigned its rights in the patent to any third party, and "[a]ny further documents recorded at the Patent Office that refer to the '033 patent as being owned by any entity other than EPL are in error." FAC ¶ 11. Those allegations are true and must be accepted as true. Yet the Government continues to rely on the security agreements' secondhand assertion of incorrect ownership and asks the Court to credit that assertion over EPL's pleaded allegations, which are supported by a notarized and recorded

---

[3] Rather than interpreting the duplicate listing of the '033 patent with different owners within the same schedule (ECF 8-1 at A26, A35) as further evidence of error, the Government assumes that the two entities are co owners. ECF 17 (Mot.) at 23.

assignment by the inventors and the face of the patent. Each of the Government's arguments must be rejected.

**Govt. argument 1:** "Logic thus dictates that Rocket Labs, Solaero, and Planetary could not have granted the defined security interest in the '033 Patent without first possessing legal title and all substantial rights to the patent." Mot. at 24.

To the contrary, logic dictates that 2023 security agreements erroneously listed the '033 patent's ownership—twice, to two different owners.[4] That is the only reasonable inference to draw from the pleaded, and supported, allegations that EPL has fully owned the '033 patent since its issuance in 2015 and from the absence of any assignment to the contrary.

**Govt. argument 2:** "The absence of any recorded assignment reflecting EPL's loss of ownership does not alter this conclusion because 'the patentee may effect a transfer of ownership for standing purposes if it conveys all substantial rights in the patent to the transferee.'" Mot. at 24, quoting *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007).

This argument also fails. *Propat* states that "[e]ven if the patentee does not transfer formal legal title, the patentee may effect a transfer of ownership for standing purposes if it conveys all substantial rights in the patent to the transferee." *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). This means that a formal legal assignment or title transfer is not necessary. It does not mean—as the Government seems to suggest—that "all substantial rights" to a patent can be transferred without there being an actual written agreement of some type (whether it is a formal legal assignment, exclusive license agreement, a joint research agreement, etc.) in which those rights are transferred. Moreover, it is well established that a written instrument is necessary to effect such a transfer. *Mentor H/S, Inc. v. Med. Device All.,*

---

[4] The Patent Office does not review or approve recordings of security interests or assignments. That the 2023 security agreements were recorded does not mean they are valid, and it certainly does not mean their listing of who owns which of the dozens of assets identified in the agreements is correct. 37 C.F.R. § 3.54 ("The recording of a document pursuant to § 3.11 is not a determination by the Office of the validity of the document or the effect that document has on the title to an application, a patent, or a registration"); *Sirf Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010) ("The recording of an assignment with the PTO is not a determination as to the validity of the assignment").

*Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001) ("The party asserting that it has all substantial rights in the patent must produce . . . written instruments documenting the transfer of proprietary rights." (internal citation omitted; ellipses in original)).  The Government is unable to point to any such transfer agreement, and the security agreements the Government does rely on do not provide admissible evidence of such a transfer agreement's existence, much less the validity or effect of any such agreement.

To the contrary, the Government's reliance on the "owner" column in the security agreement table is impermissible because the listing of Planetary Systems and Solaero in that column constitutes inadmissible hearsay.  Fed. R. Evid. 801, 802.  Statements in a written agreement do not constitute hearsay when offered to prove what the terms of the agreement are. But statements within an agreement constitute inadmissible hearsay when offered for the truth of matters outside of the agreement.  Thus, the inclusion of the '033 patent as a piece of property that the parties to the security agreements intended to be subject to a security interest is not itself hearsay, but the table's identification of that patent as being owned by Planetary Systems and Solaero is inadmissible hearsay, because the Government is using that identification to prove it is true that these entities actually own the patent.

Similarly, the Government's reliance on the security agreements to show that one or more other agreements exist in which Planetary Systems or Solaero acquired title or all substantial rights to the '033 patent violates the best evidence rule.  *Bannum, Inc. v. United States*, 151 Fed. Cl. 755, 768 (2021) ("The 'best evidence' rule…requires the original records to support a claim when a party seeks to prove the contents of a writing." (citing Fed. R. Evid. 1002; *RN Expertise, Inc. v. United States*, 97 Fed. Cl. 460, 473 (2011))).

**Govt. argument 3:** "Solaero and Planetary are necessary parties to any lawsuit regarding infringement of the '033 Patent.  As a result, EPL cannot proceed if either Solaero or Planetary refuse to voluntarily join the lawsuit."  Mot. at 29.

This argument again relies on the false premise that EPL is not the sole owner of the asserted patent, which it is.  Moreover, the Government cannot obtain a dismissal based on an unproven affirmative defense that third parties co-own the patent.  *Focus Prods. Grp. Int'l v. Kartri Sales Co.*, 2021 U.S. Dist. LEXIS 92470, at *5 (S.D.N.Y. May 14, 2021) ("[I]nsofar as the defense proposes to file a motion to dismiss based on an asserted lack of standing, the standing issue to which defendants refer, contrary to defendants' suggestion, does *not* implicate the Court's subject-matter jurisdiction. It implicates instead a matter of statutory standing, an affirmative defense." (citing *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019)).

In addition, because "[t]he issue of whether the statutory requirements are met…is not jurisdictional and a defect is curable by joinder," the Court should decline the Government's invitation to assume both that the Government will prove co-ownership by Planetary Systems and Solaero and that these entities will refuse to be joined as co-plaintiffs (or that they have not waived their right to refuse joinder).  *Intell. Techs. LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024); *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014) ("[i]f, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers.").

V.    **The Government fails to show any deficiency in the allegations concerning the accused XM1155-SC Hypervelocity Projectile.**

A.    **EPL's claim against the XM1155-SC is not time-barred.**

In its first motion to dismiss, the Government argued that EPL's claims were time-barred because "the Complaint fails to allege that the Government infringed the '033 Patent within the

six-year statute of limitations." ECF 8 at 22. The Amended Complaint alleges that the first version of the Hypervelocity Projectile that infringed the patent was the XM1155-SC, and this version was first manufactured and delivered well within the six year period that predates the filing of the initial Complaint:

> The first manufacture and delivery of a version of the Hypervelocity Projectile that meets all elements of at least one claim of the '033 patent occurred less than six years before the filing of the original complaint in this case and is believed to have occurred within a year before the successful testing by the Army and BAE Systems of the XM1155-SC version of the Hypervelocity Projectile that took place in or around March 29, 2023.

ECF 11 (FAC), ¶ 11.

The Government's current motion does not appear to attack EPL's assertion against the XM1155-SC product based on statute of limitation grounds. The Government does argue that "Plaintiff's claims regarding HVPs generally are time-barred." Mot. at 25-28. We interpret this section as arguing that any claims against different versions of the HPV that preceded the XM1155-SC product would be time-barred, which is irrelevant because there is no such assertion (as further explained below). But to the extent that the Government is intending to argue that any assertion against any version of the HVP class of products (including the XM1155-SC) are time-barred because the earliest versions of the HVP were first offered prior to the six year window, that argument fails as a matter of law.

The statute of limitations for infringement is not assessed with respect to a broad class of products—it runs for each individual device that constitutes the class of products. There is a "distinction between the class of devices that infringes the claims in suit and the discrete individual devices which together constitute the class of infringing devices. The class is not foreclosed from infringing merely because one of its members was manufactured or used by the government more than six years prior to the filing of the suit." *Starobin v. United States*, 229 Ct.

Cl. 67, 71 (U.S. 1981).  In other words, if a specific infringing model of Hypervelocity Projectile was manufactured outside of the six-year statute of limitations, that would not foreclose infringement for other specific models of Hypervelocity Projectiles manufactured within the six-year statute of limitations.  That is because infringement is assessed on a product-by-product basis: "[e]ach device, i.e., each individual member of the universe of infringing devices, can be taken only once in its lifetime, and if that taking occurs prior to the six-year period which immediately precedes the filing of the lawsuit in the Court of Claims, then recovery as to that particular device is barred."  *Id.* at 71-72.  Moreover, if models of the Hypervelocity Projectile that do not even infringe the patent were offered outside the six-year statute of limitations, that has absolutely no effect on the timeliness of the assertion against the infringing XM1155-SC.

### B.     EPL's claim against the XM1155-SC is adequately pleaded.

#### 1.     The allegations are plausible and provide more detail than is necessary to put the Government on notice.

"On a motion to dismiss, Plaintiff need not prove its case or even plead its claim of infringement element by element."  *JG Techs., LLC v. United States*, 156 Fed. Cl. 691, 713 (2021).  "To the contrary, an adequate complaint need only contain some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024) (internal quotes and cites omitted) (reversing district court's grant of motion to dismiss).  The Amended Complaint more than satisfies this standard.  It explains:

The '033 patent involves 'incorporating a propulsion system . . . and a chassis structure into an additively manufactured part,' such as a 'single-piece chassis and propulsion system,' that can use 'a material useful as solid fuel' as part of the casing body."  FAC 11 at ¶ 5 (citing '033 patent).  The propulsion system taught by the '033 patent "allows the system's fuel to serve

as part of the device structure" which can produce benefits for "various types of propulsion system[s] … (e.g. rocket, missile, satellite, UAV, etc.)." *Id.* The Hypervelocity Projectile "contains a propulsion system. The device is a 'guided' projectile—i.e., it can be guided, or steered, during its flight." *Id.* at ¶ 15; *id.* at ¶ 13 (The Hypervelocity Projectile can be used against "not just fixed targets but 'moving targets of interest' through the use of 'advanced guidance'"). EPL alleges that the Hypervelocity Projectile uses "an on-board propulsion system" that "provides quick reaction control over the position and orientation of the missile." FAC at ¶ 13.

The Amended Complaint further explains why EPL's infringement claim is plausible— the only way to guide a projectile at hypersonic speed is in a manner that infringes the '033 patent. Precision guidance at hypersonic speeds "requires more control authority than the device's fins can achieve" because "aerodynamic fins do not work for guiding missiles at hypersonic speeds or in the Stratosphere or above the atmosphere (which is needed for mid-course interception) due to the non-continuum (or rarified) air flow in these conditions." *Id.* at ¶ 15. Contractor BAE's public statements confirm that "the device does not contain a motor that can be used for any purpose, including guiding." *Id.* (citing BAE's statement that "The high-velocity compact design relieves the need for a rocket motor to extend gun range"). And any other "alternatives (such as servo motors) are not feasible—they would not be able to sustain the cannon shock from the firing of the projectile, there would be insufficient room within the volume of the projectile to house the alternatives, their cost would be prohibitive, and they would not perform with sufficient accuracy." *Id.* at ¶ 13. Thus, "[t]he only way for the XM1155-SC version of the Hypervelocity Projectile to achieve this precision at hypersonic speeds is with an on-board propulsion system that infringes the '033 patent." *Id.*

The Amended Complaint also illustrates the manner in which the propulsion system in the XM1155-SC version Hypervelocity Projectile infringes each element of Claim 1 of the '033 patent. FAC at ¶ 15. For example, the complaint alleges that the Hypervelocity Projectile uses a "casing body [that] consists of solid rocket fuel that is capable of being consumed when combusted." *Id.* It has a "combustion chamber" that "is contained within the casing body for volume efficiency." *Id.* And the device "also includes a fuel chamber that stores an oxidizer in the form of a liquid or a pressured gas" that "is designed to at least partially surround the combustion chamber to achieve compactness and to help the device sustain the high pressure exerted on the device during launch and flight." *Id.*

The Amended Complaint's allegations more than clear the bar for establishing plausibility at the pleading stage and put the Government on notice that the XM1155-SC version Hypervelocity Projectile's propulsion system infringes the '033 patent. Similar allegations have been held to provide sufficient notice of infringement. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1287 (Fed. Cir. 2013) ("[Plaintiff] has alleged that [Defendants] must and do modify or 'translate' digital signals they receive, and it has alleged that they do so using [Plaintiff's] patented methods and systems. We find these allegations adequate"); *Power Density Sols. LLC v. United States*, 159 Fed. Cl. 208, 220 (2022) ("Plaintiffs' allegations that the defense contractors participating in the ICECool program developed and supplied the United States with systems that infringe Plaintiffs' patents are sufficient to state a claim under the notice and plausibility standard").

### 2. The Government's attempt to rebut the pleaded allegations with factual disagreements and attorney argument should be rejected.

The Government asserts a series of arguments attacking the sufficiency of the allegations against the accused XM1155-SC. We rebut each in turn.

11

**Govt. argument 1:** "EPL never explains why any HVP device cannot be precisely guided through its fins or why precision guidance could not be achieved but for practicing the claimed invention."  Mot. at 31-32.

The Government is wrong.  The Amended Complaint explains that precision guidance at hypersonic speeds "requires more control authority than the device's fins can achieve" because "aerodynamic fins do not work for guiding missiles at hypersonic speeds or in the Stratosphere or above the atmosphere (which is needed for mid-course interception) due to the non-continuum (or rarified) air flow in these conditions."  FAC at ¶ 15.  That precision guidance is not accomplished by use of a motor because "the device does not contain a motor that can be used for any purpose, including guiding."  *Id.*  And other "alternatives (such as servo motors) are not feasible—they would not be able to sustain the cannon shock from the firing of the projectile, there would be insufficient room within the volume of the projectile to house the alternatives, their cost would be prohibitive, and they would not perform with sufficient accuracy."  *Id.* at ¶ 13.  As a result, "[t]he only way for the XM1155-SC version of the Hypervelocity Projectile to achieve this precision at hypersonic speeds is with an on-board propulsion system that infringes the '033 patent."  *Id.*

**Govt. argument 2:**  "[T]he Amended Complaint attempts to bolster its underdeveloped infringement theory by relying on statements that are specific to either the general class of HVPs or other HVPs and irrelevant to Claim 1… But such patchwork infringement allegations are improper."  Mot. at 32.

EPL's infringement theory is not "underdeveloped."  The allegations were well-researched—with the support of technical experts—and they more than meet the pleading standard.  This is especially true for an accused product that is made by defense contractors for the U.S. military, neither of which publish classified and confidential schematics and engineering drawings for the product.  *Power Density*, 159 Fed. Cl. at 220 ("The Court can reasonably infer from these allegations that at least some of the allegedly infringing systems may have been

incorporated into military technology. The Court can also infer, therefore, that Plaintiffs may not be able to identify these systems more precisely without discovery.").

As for the Government's "patchwork" criticism, there is nothing improper about citing to different sources of evidence—rather than a single omnibus document—in making allegations of infringement. Nor does the citation to materials that discuss common elements across the HPV products along with materials that discuss the unique features of the XM1155-SC version provide support for the Government's attempt at dismissal.[5]

**Govt. argument 3:** EPL's allegations are "built on a mischaracterization" of the 2023 testing reports and "implausible" allegations about the accused product's fins and guidance system." Mot. at 34-35.

Out of one corner of its brief the Government stresses that "the technology at-issue" is "complex—it is quite literally rocket science." *Id.* at 32. And out of the other corner, the Government asks the Court to disregard the well-pleaded allegations of the Amended Complaint and instead accept its attorney argument on the physics of rocket science. *Id.* at 34-35. The Government's attorney argument purporting to explain and reinterpret the technical evidence is insufficient to defeat EPL's claims on the merits, much less on the pleadings. *Univ. of S. Fla., Bd. of Trs. v. United States*, 146 Fed. Cl. 274, 294 (2019) ("'Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony. It does not, and cannot, support [the movant's] burden on summary judgment.'" quoting *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068

---

[5] For example, the Government asserts: "Even the graphical representation of the claimed propulsion system's location in an XM1155-SC cannot be attributed to the accused product because the Amended Complaint does not include any context or support that the HVP depicted in the facsimile picture is the XM1155-SC device" and the "same image supported the allegation at all HVPs infringe" in the original complaint. Mot. at 32. The response to this supposed inconsistency is simple: the "propulsion system's location" has not changed. But rather than drawing all reasonable inferences in EPL's favor, as required at this stage, the Government urges the Court to do the opposite and to credit technical arguments that are supported only by the argument of the Government's attorneys.

(Fed. Cir. 2005)); *Chem. Separation Tech., Inc. v. United States*, 51 Fed. Cl. 771, 816 (2002) ("Mere attorney argument is no substitute for concrete evidence of what one skilled in the art would have perceived - defendant's counsel was neither qualified as an expert nor did he testify at trial, and this court will not permit him essentially to testify in his brief."); *ThermoLife Int'l, L.L.C. v. NeoGenis Labs, Inc.*, 411 F. Supp. 3d 486, 498 (D. Ariz. 2019) ("As plaintiff is quick to point out, much of the foregoing is attorney argument, not facts on which the court could rely to determine whether SuperBeets and BeetElite practice the three patents." (denying motion to dismiss with respect to those products)); *MAZ Encryption Techs. LLC v. Blackberry Corp.*, No. 13-304-LPS, 2016 U.S. Dist. LEXIS 134000, at *15 (D. Del. Sep. 29, 2016) ("The Court is not free to accept Defendant's contrary attorney argument that claim 31 is directed to a 'conventional' way of transparent encryption" (denying judgment on the pleadings in connection with a 101 challenge)).[6]

* * *

Finally, the Government seems to suggest that EPL will or should be limited to assertion of just claim 1 of the '033. Mot. at 5 (The Amended Complaint "does not raise any specific allegations related to Claims 2–9 of the '033 Patent or their particular limitations"), *id.* at 32 ("The Amended Complaint makes no attempt to allege facts related to any infringement of Claims 2–9."). But a complaint for patent infringement need not identify all claims of the patent that the plaintiff will assert. The identification of asserted claims comes later, in the plaintiff's

---

[6] In one of its less technical attempts to interpret the evidence, the Government states: "[C]ontrary to the Amended Complaint's allegation that the 'orange square' in the unidentified HVP facsimile picture 'obscure[s] the rocket nozzle located at the end of the projectile,' ECF 11, ¶ 15, close-ups of the common HVP device from the same recording confirm the absence of any 'rocket nozzle[s],' AA044–64 (Ex. 6)." Mot. at 36. The Government does not address the image with the orange square or provide any alternative interpretation of its purpose. And the Government overlooks the most plausible explanation for its "close-up" images: the *display* model shown at the *unclassified* Sea Air Space Expo did not include rocket nozzles, for a reason.

14

infringement contentions.  *Power Density Sols., LLC v. United States*, No. 21-911C, 2023 U.S. Claims LEXIS 479, at *10 (Fed. Cl. Mar. 24, 2023) ("Under Patent Rule 4, preliminary infringement contentions must identify each asserted claim").

**VI.    The Government's remaining arguments are of no effect.**

As explained above, the Amended Complaint identifies the XM1155-SC version of the Hypervelocity Projectile as the first version of the HPV that infringes at least one claim of the '033 patent.  FAC ¶¶ 13-14.  Because that device was first manufactured "beginning in 2022 or later" (*id.* ¶ 14) and Plaintiff does not accuse any previously manufactured device of infringement, the Government's statute of limitations arguments as to any other version of the HPV (Mot. at 25-28) are irrelevant.

In addition, while the Amended Complaint continues to include the different trade names that the defense contractors and the Government have used to describe the Hypervelocity Projectile, the Amended Complaint only accuses the XM1155-SC version of infringement (FAC ¶¶ 13-15, 17), and EPL is currently unaware of any additional versions of the HPV that meet all elements of at least one claim of the '033 patent.  Accordingly, the Government's arguments concerning the general "class" of HPV devices (Mot. at 36-38) are moot.

**VII.    Conclusion.**

The Amended Complaint is not deficient and should not be dismissed in whole or in part. But if the Court disagrees and concludes that additional details are needed for any aspect of the allegations, Plaintiff requests leave to amend to add any such detail the Court finds lacking.

Dated: September 3, 2025                          Respectfully submitted,

                                                 *s/ Jeff Eichmann*
                                                 John Jeffrey Eichmann
                                                 (Admitted in Court of Federal Claims)
                                                 EICHMANN, a professional corporation

15

225 Arizona Avenue, Suite 300
Santa Monica, CA 90401
Tel: (310) 849-0367
jeichmann@eichmann.com

Nancie G. Marzulla
Roger J. Marzulla
Sebastian E. Ray
Marzulla Law, LLC
1150 Connecticut Avenue, NW
Suite 1050
Washington, DC 20036
(202) 822-6760
nancie@marzulla.com
roger@marzulla.com
sebastian@marzulla.com

*Counsel for Plaintiff EPL*

Of Counsel:

Navid C. Bayar
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
nbayar@reichmanjorgensen.com

16